The District Court here erroneously granted a motion to dismiss my client's Section 1983 claims. And it did so on the basis of the statute of limitations. So really we've got two fairly narrow issues here on appeal. The first one is when did my client's Section 1983 claims arise? And is this discriminatory charge that the utility company is charging them, does it constitute a continuing ill of the original violation or a continuing unlawful effect that would toll the statute of limitations? So before we get into it, y'all review this thing de novo. You're supposed to accept all the facts and the complaint as true. Make all reasonable inferences possible in favor of the complaint. And since this is a motion to dismiss, it's got to be obvious from the face of the complaint that the statute of limitations does in fact bar the lawsuit. So I don't know how much of the facts y'all are familiar with, so I'll start with them. In December of 2009, the board here hired Marlar Engineering to put together a sewer plan for this unincorporated community in Pulaski County. Now, Pulaski County, you probably know that's where Little Rock is, but this is outside the city limits, probably closer to north Little Rock. We don't need all the facts. Okay. Particularly if you dwell on the... I'm just trying to give it some color. I'm trying to give it some color, Your Honor, but I will move on. Your brief does that. Okay. So let's just... I thought what was interesting to learn in your second argument about the significance of finishing the sewer system versus the coerced agreement... Yes, sir. ...of all the things that Mr. Humphrey did or others did on his behalf to urge every available political elected official to do something about this, which told me that obviously he was perfectly aware of the harm done by the coerced agreement. Right. And so you're getting to the point, why doesn't the signing of those grinder pump agreements cause the statute of limitations to start running? That's the issue we're looking at here. It certainly caused them to start running. Well, it caused... Whether a continuing violation then somehow extended it or extended the deadline, the end place. Well, let me address when I'm advocating the statute of limitations begins to run. The grinder pump agreements were not an official act of the board. Marlar's plans were approved by the USDA in 2010. Those plans provided sewer gravity for everybody, the entire community. At no point did that board formally vote to cause these four or five families to have grinder pumps instead of gravity sewer. At no point did the USDA officially or formally approve... But that's not the cruel law. I mean, a cruel law, it doesn't matter how you became aware of the injury. Were you aware of the injury? If so, then most causes of action accrue. Well, it's got to be inevitable that the discrimination is going to occur. Well, it doesn't. I'm not going to argue with you about the law. I've been reading your opinion since I was in law school, so it would be silly of me to argue the point of law. I hope not too often. But really, this reminds me of the antitrust laws where a lot of this was born and raised. The accrual and the continuing violation doctrine. And the distinction I always learned was a merger is a one-time event. It has constant after effects. But it is unlike a price-fixing, a continuing price-fixing conspiracy which requires new bad acts every day. And this one strikes me as analogous to a merger. It was an event, the adverse consequences of which were or should have been immediately apparent. Why am I on the wrong track? Okay, so there is a continuing unlawful discrimination occurring here because the North Little Rock Wastewater Department charges everyone in this community. No, the rates are set by the bad act. Here's the difference. Everyone but my clients, these few other families, don't have to pay. Once they pay that rate to the sewer department, they don't have to pay for anything else. The sewer department maintains the sewer lines, replaces the sewer lines, does all that stuff. But not when it comes to these grinder pumps. These grinder pumps require electricity. And they're expensive to replace and maintain. So my client is paying for those things that no other sewer gravity person in this community are paying. It's a discriminatory charge because the North Little Rock Wastewater is not maintaining all components of my client's sewer system, whereas they are the other people. And every time the North Little Rock Wastewater Department decides to charge that rate each month, that is a brand new discrimination. And this argument isn't out of its head. In fact, there's a case called Chachas. I think that's how you pronounce it. I know it's not binding on this court, but it does demonstrate this idea that continuing utility rates. Is it cited in your brief? Yes. It's the District of Nevada. Like I said, it's not binding on this court. But it demonstrates that my argument has merit. In this particular case. I don't see it in your table of authorities. I want to read it, but I don't know where to find it. It's on the flyer. Oh, yeah. There it is. Okay. It is. Yeah. So, in this case, the gist of it is the plaintiff owned like a four-unit hotel or something along those lines. And the city changed the way it rated the hotel, saying it had more rooms than it did. And charged it more for utility rates. And eventually, after a couple of years of this guy not paying the utility rates, the city shut him off. And he brought a lawsuit. And in this court, or in this particular case, there was a 1983 action. And the statute of limitations there was two years. It's three years here in this case. But what the court here said was that beginning in February of 2004 through June of 2006, the city charged plaintiff 44-some-odd dollars in landfill fees and $106 in sewer fees. These calculations were based on the motel having five rentable rooms and four apartments. So, the court finds that plaintiff continued to suffer as a result of the alleged discriminatory act through June of 2006, when defendants again reclassified the motel as a closed business and also shut it off. Is that a damages claim? In this particular case. You're seeking damages for the increased cost. Plus, we're also seeking an injunction. But I'm curious about how we have federal jurisdiction here over this damage claim that you're asserting. Well, it's based on Section 1983. Well, but... I guess the point of me citing to this case, you think that 1983 gives every citizen of Arkansas and get into a dispute of jurisdiction in the federal court for the damages? You're paying too much more here? I wasn't aware that 1983 was that broad jurisdictional. Well, Your Honor, I'm here today arguing on statute of limitations issues, and I don't claim to be an expert on everything 1983. What I'm trying to say is there was a continuing... that we have jurisdiction over an issue. You're saying your damages are the money that you had to pay, so it's a claim for damages of some sort, I guess. Is that right? Yes, and it's also a claim for an injunction against the defendants so that they will stop charging this discriminatory rate. You also assert a Title VII claim to race discrimination or something like that? Well, it's based on the Equal Protection Clause. I see. Yeah, yeah. But my point is every time that the utility charges the rate, that is a new discrimination. Yes, I understand that the coerced contract, allegedly coerced contract, provides for the rate that will be charged. Yeah, but it was coerced. It was induced by fraud, according to the... It's not enforceable. It's like the illegal merger. Well... You were coerced to sign a contract which commits you to make periodic payments. But since there was no official action by the board or the USDA to approve the use of grinder pumps, there was nothing... That's why my clients went around trying to figure out what was going on. And the sewer system wasn't completed until November of 2013. At any point prior to that, any of these public officials could have weighed in and said, listen, board, listen, MARLAR, put in a pump station instead of these grinder pumps. There was nothing inevitable until the sewer system was constructed in November of 2013. That means the three-year statute of limitations did not run. And even if you find that it does, each charge of discriminatory rates is a continuing unlawful act, not an ill from the original act. There is... Okay, so I cited UCHACHAS, which says that utility rates that are charged are like a continuing unlawful effect. So if you look at the cases where you have continuing ills instead of continuing lawful acts, they're different than this case. The district court relied on RICS. But in RICS, what happened was a professor was denied tenure. That was an official, formal decision. And they made him sign a one-year contract so he could work another year, and then he was terminated. He argued that when he was terminated was when the statute of limitations ran, and the court said no, it was when you got news of the formal announcement from the committee. There was nothing like that here. There was no formal anything. Why isn't the contract a formal anything? They've signed up for the terms. Everyone agrees upon it. Based on the facts as alleged in the complaint, it was induced by fraud. It's not an enforceable contract. If it's not an enforceable contract, then how could it be inevitable? Wait a minute. That's the whole point of why the cause of action accrued. We could be having a discovery of the fraud accrual issue, but we don't. So it was induced by fraud. It's still the contract that caused the harm. One of the things that's alleged in the complaint is that there was no hearings, pre- or post-deprivation of any nature of any kind. There was never a formal or official position taken. It was simply this notion of this renegade board member, the president, who decided, hey, I'm going to slip these grant agreements to these people and tell them it's because of fraudulent reasons. That can't be when the cause of action accrues. It doesn't accrue until it's inevitable. Back to the other situations. In Monton, there was a fellow who was in a psych ward. There's five different levels of liberty you're granted in the psych ward, and he was at level four, which is high. And then the agency got rid of his freedom and demoted him, and he brought a suit. And in this particular case, each day that he was denied that liberty was a continuing and lawful effect. That's analogous to each month being charged a new rate. They're being compelled to pay a rate that no one else is, except for the other three or four families who happen to be black, too, that no one else in that community has to pay. When could Mr. Humphrey have brought a fraud in the inducement lawsuit? What if he had? When could he have? Under Arkansas law, there's a three-year statute of limitations. Okay, so why not the day or week or month after the signing of the fraudulent contract? How can you deny that he had the ability to bring a fraud in the inducement claim? The minute the ink was dried, so to speak. Well, because he wasn't sure that that was going to be the case. Yeah, but that's not accrual law. Accrual law expects plaintiffs to err on the side of getting to court promptly. Your Honor, I'm out of time. Well, I guess I thought you'd say this isn't a fraud in the inducement claim, but then I struggled to see what it is. Well, it's not. I mean, it's a Section 1983 action for due process. Based on a fraudulently induced contract. Well, no. It's based on the fact that they didn't get a pre- or post-deprivation hearing concerning the sewer system at any point. In fact, when he files his complaint, he didn't get a hearing. All we get is a motion to dismiss, and it's granted. Thank you. Wait, wait. You got up and said that the problem here was that he's having to pay more for his sewer than the other people. Effectively, yes. So he's been damaged by what, breach of contract? Okay. Because he was denied pre- and post-deprivation due process, because he's been discriminated against, he's been damaged. He's had to pay more for a sewer system than the people who weren't discriminated against, than the people who got the gravity sewer system. Any time there's a breach of contract, there's, in essence, a discrimination by the breacher to the breachee, I suppose. But I'm still. Let me see if I can refocus this. I think you better. Okay. This is a lawsuit. It's a 1983 lawsuit. Well, you say it's a 1983 lawsuit. I'm saying that I question whether it's a 1983 lawsuit because you're basing it on, you say, due process and the equal protection clauses. But this is just a common law damages claim that you're asserting here. Well, I mean, Section 1983 is like a tort. So the only claim, the only remedy you want here is a due process do-over? What I want is I want for this to be reversed and remanded back to the district court. No, no, no. I know what you want. I know. What do you want in the district court? What remedy? You want an injunction against these rates, right? Correct. Without a due process do-over. So it's not a due process claim. Well, if we could get. . . Okay. So I'm outside walking. Obviously, I came here prepared to argue statute of limitations issues. None of these issues have yet been raised that you're bringing up. We'll stick to the statute of limitations. Okay. Thank you. Okay. But you understand if we have an obligation to determine whether we have jurisdiction over your dispute here. Yes, sir. I do understand that. And I never got. . . I'm using up my rebuttal time. So I never refocused. The whole reason I've come up with this thing, I've been arguing this thing about the unenforceable contract,  It's what distinguishes the cases. So that's why that issue was raised. It's not forming a basis of the 1983 claims except to the extent that it distinguishes the cases. Mr. Phillips. May it please the Court. Your Honors, I'm Jim Phillips. I represent the Applee-Eureka Gardens Public Facility Board. I, along with Jamie Dempsey, who represents Lawrence McCullough. I don't understand why we need two appellees on a statute of limitations issue. But go ahead. Jamie will have five minutes, and I have reserved ten. And as a matter of fact, I have five minutes. And I'll get to my argument. If there's any duplication, I'll be annoyed. Understood, Your Honor. This appeal is about the delayed but inevitable consequences of a decision that is alleged to be discriminatory. We know two things from the face of the complaint and the amended complaints, which is what this court looks at in determining whether the district court correctly dismissed it. First is, at some point between April 12, 2010, and October 23, 2011, which is when these agreements were signed, Ray Roberts, the chairman of the board, the facilities board, notified the appellants of the board's decision that they would be getting grinder pumps rather than gravity sewer. The second thing we know is when they signed the agreements, again on October 23, 2011. Those agreements clearly set forth those consequences, that they would be getting grinder pumps, that they would have to pay for the operation and maintenance of those pumps, and it is that, the operation and maintenance expense, that the appellants are claiming today are upset about today. But the wrongful act of discrimination that is alleged is the grinder pumps, the decision to give them the grinder pumps. Discrimination in what way? The issue is he had a contract, or he thought he had a deal for gravity, and you told him no, it was not going to be gravity. What is the constitutional issue here? The constitutional issue? How is this violating the Constitution, this transaction you are talking about? Appellants, they bring their claim under Section 1983, as you stated, Judge Beam. I think they are attempting to assert a Title VI action for receipt, an entity that receives federal funding. I think that is what they are trying to. Is that the hook they have? Because this was being built with federal funding, this subdivision or this sewer system or what? The complaint does not state that, that it is a Title VI action. Well, it has to kind of state in the complaint what it is based on, doesn't it? That is true, Judge Beam, and it does not. Reading the complaint, it appears to me that that is the type of action that is being asserted. It is being brought under 1983, which, no, is not a basis of subject matter jurisdiction. Title VI claim would be where that comes from. Well, if he is alleging a violation of a federal statute, that is something that 1983 probably provides jurisdiction for, but just a run-of-the-mill cause of action for damages or breach of contract would not ordinarily be something that we have any jurisdiction over. No, unless it falls under federal question jurisdiction or there is diversity of citizenship, which those are not in play here. I agree with that, Judge Beam. But you have not raised a jurisdictional argument here. We have not raised that in the briefing. Again, because I think the appellants are intending to bring a Title VI action for violation of a federal statute. You think they were intending to, but did not? The complaint does not state that. Okay. Yes. More than three years after the decision that is alleged to be discriminatory was communicated clearly to the appellants by Ray Roberts, and after they signed unambiguous contracts setting forth these consequences, the Humphreys brought their claims, and the district court accordingly determined that they're barred by the three-year statute of limitations that applies to 1983 claims in Arkansas, which no one's disputing the amount of time. And this court should affirm the district court in all respects. How is this closer to the situation where the fellow gets a letter, you're going to be denied tenure, but he stays on for a year and then is terminated? How is it closer? I think your position is this is closer to that kind of situation than it is when you've got a violation, say an Eighth Amendment, or some kind of deprivation of rights, and it just keeps going on every day that you continue to violate this individual's rights, and so it's an ongoing claim. How is it closer to the tenure than it is sort of the ongoing violation of a right when you've got a rate that you're paying monthly, weekly, yearly? Judge Kelly, it's a good question. I think it's much more analogous to Rick's and those Supreme Court line of cases denying tenure that involve contracts like we have in this case, and the reason is that that's the alleged act of discrimination. Everything flows from these grinder pumps. So would you have to then allege an ongoing scheme or something like that, that somehow the rates themselves, as they continue to pile up or be sent out for payment, that that's a separate scheme? How would that ever become the violation, an ongoing violation? Those would have to be alleged and shown to be discrete separate acts of discrimination that, in this case, they have a connection, a very strong one, to the act of discrimination that is barred, the decision to provide grinder pumps to the Humphreys and not Gravity Sewer. It's clearly spelled out in the contract. The contract states that they are obligated for operation and maintenance expenses for those grinder pumps, and those acts, if they're alleged to be discriminatory, all they are is the inevitable consequences of signing those agreements and getting the grinder pumps. If your client had not charged them extra for this system, then what would the claim be here? In other words, if they were the only ones in the area that had to pay for electricity to run their sewer system, So it was just the alleged fair reduction in the fair market value of a house that has to have a grinder pump instead of being in the North Little Rock system. I think I understand the questions and where we're going here. If there was no contract and if we just had these alleged acts. If the discriminatory rates weren't the damage. If they weren't the damage because they weren't charged them. Yeah, right. I'm not sure there would be a claim. They wouldn't have any sort of damage. They wouldn't be able to seek. Well, the brief says part of the injury is the reduction in the fair market value of the houses because they got a crummy sewer system. Or they have one that's more expensive. They have a house that's more expensive to operate, at least. There is some expense associated with these grinder pumps, but again, that is clearly spelled out and was communicated. But counsel got up and said that his damages here or the insult that's been made against his clients was this additional money that they have to pay monthly to run the thing. Correct. Again, that was part of signing the agreement. They agreed to do that back in 2011. It's presumably just now occurring, and they're feeling the effects of that contract and that decision. They also don't allege, and I believe they would be required to, if they wanted to make the discriminatory charges, they allege a discrete act of discrimination from which the limitations period would run, that other people in the community that got grinder pumps didn't have to pay these charges. And they don't allege that in the complaint. That's what Rick says. And that's not in the complaint anywhere. So there's no difference between them and the other recipients of the grinder pumps. Everything goes back to this agreement and this decision that was clearly communicated to them back in 2010 and 2011. And I will end my argument unless there are any other questions from the panel. Thank you. Good morning. May it please the Court, Judge Bean, Judge Loken, and Judge Kelly. I certainly don't want to waste the Court's time, so I'm going to try to tailor my argument to what's already occurred here this morning. Just tell us what's different about your client. My client is Lawrence McCullough. Why is the statute of limitations issue any different? It's not any different. It's the same argument as they have. He was not personally involved in anything. The USDA approved the plan sometime in April 2010. At some point after that, Roberts made this decision to provide grinder pumps for some of the houses in the neighborhood. The appellants were notified of that decision, and that's reflected in the fact that they signed this agreement in October 2011. And despite these claims that it was under fraud or duress or it wasn't approved by the board or it wasn't approved in writing by the USDA, that's immaterial. Because of this agreement that they signed, they were aware that the plan was to give them grinder pumps and not this sewer system. They were aware at that moment, and they were aware they would have to pay for it. It says they would pay for the operation and maintenance. Would they have been able to file a suit that next day and have damages? Absolutely. Why not? If they hadn't paid yet and the sewer system hadn't been set up? They could file for a preliminary injunction to keep the sewer system from being built that way. They went to senators. They went to other people to try to stop this. Why couldn't they file the very complaint that was filed here seeking a preliminary injunction? Appellant's counsel referred to the Chachas case in Nevada District Court in support of his claim about these rates. And I would just note that that case is different because the court noted the rates there started at one level and then later changed. And so that was their basis for seeing a discriminatory act later, a continuing unlawful act as opposed to a continuing ill effect. Here, we just have the agreement that says you'll have to pay. There's nothing in the complaint that says after October 2011 that changed. These rates didn't start sometime after that. I'd also note that appellant's counsel relied on Montan for his argument that in that case it was an individual in a psychiatric facility and complaining about his liberty. And in that case, the Eighth Circuit observed, if it were clear that Montan's complaint related solely to the creation of the policy, we would have little difficulty rejecting the continuing violation theory. However, because he was proceeding pro se, the court said we'll give him a shot. They did not rule in any way and say these were continuing unlawful acts. They said remand to district court for determination if this theory applies. And even if the continuing violation doctrine applied in this case, the appellants do not meet the element because there are no allegations of a continued unlawful act in the complaint. Mere inaction is not enough. And that's all that happened after 2011. The appellants went to Marler, they went to the board, they went to the USDA and asked if it could be changed. And they said no. They just continued the same decision that dates back to October 2011. Counsel, could these three or five lots, what was it, three lots that are on the grinder system, could they have been served with sewer service gravity like the rest of them? Your Honor, because we have not even delved into the merits, I don't know the answer to that question. Although the district court simply ruled on statute of limitations. If you didn't get into that, what was the discrimination that you think was alleged here? The First Amendment-admitted complaint alleges under 1983 claims for substantive and procedural due process and equal protection. So that's their claim under color of state law, presumably based on the fact that these are municipal entities. That's my understanding of the First Amendment complaint. A municipality in the state of? Arkansas. Arkansas. So the wastewater facility, the city of North Little Rock, the community board. Or to be guided by county, city, state ordinances and statutes, is that? Correct, Your Honor. Thank you. Very good. The case has been thoroughly briefed and argued and we'll take it under advisement. Do I have a file to revoke on? Yes. Okay.